**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JIBREEL REID,                                    )
                                                 )
                         **Plaintiff,**          )
                                                 )
            v.                                   )   **Civil Action No. 07-00725 (PLF)**
                                                 )
UNITED STATES PAROLE COMMISSION, *et al.,*       )
                                                 )
                                                 )
                         **Defendants.**         )
_____)

## <u>DEFENDANTS' MOTION TO DISMISS COMPLAINT</u>

Plaintiff brings this action  pursuant to 42 U.S.C. § 1983, against the U.S. Parole

Commission and six individuals: Edward R. Reilly, Chairman, U.S. Parole Commission; Pat

Denton, Hearing Examiner; Isaac Fulwood, U.S. Parole Commissioner; and John Does #1, 2 and

3 ("Defendants"), alleging that Defendants conspired to violate Plaintiff's rights under the 5th

and 14th Amendments to the United States Constitution, in violation of the *ex post facto* clause,

by declining to release Plaintiff on parole.

Defendants[1] hereby move, pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), (4),(5), and (6), to

dismiss this action for lack of subject matter jurisdiction, lack of personal jurisdiction, improper

venue, insufficiency of process and of service of process, and failure to state a claim upon which

relief can be granted.

*Pro se* Plaintiff should take notice that any factual assertions contained in the attached

Memorandum in Support of this Motion and supporting exhibits may be accepted by the Court as

true unless the Plaintiff submits his own affidavit or other documentary evidence contradicting

the assertions therein.  *See Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992).  Furthermore, should

this Court treat Defendant's Motion to Dismiss as a motion for summary judgment, because of

the attached exhibits, the Federal Rules of Civil Procedure provide:

---

[1]        The Defendants' limited appearance herein in the form of this motion does not
constitute  acquiescence in the manner of service, a waiver of proper service, or a voluntary entrance
of appearance.

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988) ( *pro se* party may lose if he fails to respond to a dispositive motion); Local Rule 56.1 ("the court may assume that facts identified by the moving party in its statement of facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion").

In support of this Motion, the Court is referred to the (1) accompanying Memorandum of Points and Authorities; (2) Statement of Material Facts As to Which There is No Genuine Issue; (3) supporting Exhibits, and (4) proposed Order attached hereto.

<div align="center">

Respectfully submitted,

_____Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____s/Sherease Louis_____
SHEREASE LOUIS
Special Assistant United States Attorney
United States Attorney's Office, Civil Division
555 4th Street, NW
Washington, D.C. 20530

</div>

Of Counsel:
Sharon Gervasoni, Esq.
Assistant General Counsel
U.S. Parole Commission
Bethesda, MD

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JIBREEL REID, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Civil Action No. 07-00725 (PLF) |
| | ) |
| UNITED STATES PAROLE COMMISSION, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE

1.     Plaintiff, Jibreel Reid, was sentenced by the District of Columbia Superior Court on September 28, 1993, to 15 years to life imprisonment for Murder II While Armed.  *See* Def. Exhibit 1, 2.

2.     Plaintiff became eligible for parole, by completing service of his minimum term, on January 10, 2003.  Def. Exh. 1 at 3.

3.     The U.S. Parole Commission ("Commission") conducted an initial parole hearing for Plaintiff on July 9, 2002.  Def. Exh. 4.

4.     At the July 2002 hearing, the Commission calculated Plaintiff's Total Guideline Range under 28 C.F.R. §2.80 to be 154-179 months.  *Id.*

5.     In July 2002, the Commission denied parole, and ordered a reconsideration hearing after 36 months.  *Id.*

6.     The Commission conducted a reconsideration hearing on September 14, 2005. Def. Exh. 3.

7.     At the September 2005, hearing, the hearing examiner determined that the guidelines had been incorrectly computed at the initial hearing concerning the number of months to be served for parole eligibility, and that the correct guideline range was 170-190 months.  *Id.*

8.     The Commission awarded Plaintiff 13 months for superior program achievement, lowering the Total Guideline Range to 157-177 months.  *Id.*

9.    In September 2005, the Commission denied parole, and ordered a reconsideration

hearing in 36 months.  *Id.*

10.    The Commission stated the following reasons for its decision:

After consideration of all factors and information presented, a decision above the Current Total Guideline Range is warranted because . . . you are a more serious risk than indicated by your salient factor score.  The victim was a community activist in the neighborhood who tried to make his neighborhood safer and drug-free.  On the date of this offense, the victim confronted you about selling drugs in his neighborhood after he had seen you in the neighborhood before and after other confrontations.  The victim did pull out a knife and chase you.  When you ran down the block, you told the victim you would be right back.  You returned with your friends and the group began to beat the victim with a car jack handle and a gun.  You and a codefendant go[t] the knife away from the victim and you stabbed the victim 9 times. Some of the wounds were 5 inches deep.  You then threatened to physically harm a potential witness if the witness went to the police.  You told the witness that if the witness provided information, either you or your friends would hurt the witness.  The brutality of this offense shows that you have a callous disregard for human life.  In addition, after you committed the offense, you threatened to retaliate against a witness.  The brutality of the offense and the threats of retaliation have not been taken into consideration in the computation of the guidelines. As a result, the guidelines do not reflect the totality of this offense.  Your behavior shows that you are a serious threat to the community.

*See* Exh. 3, Notice of Action.

11.    On April 23, 2007, the Plaintiff filed this suit in the District of Columbia.

Respectfully  submitted,

_____Jeffrey  A.  Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____s/Sherease Louis_____
SHEREASE LOUIS
Special Assistant United States Attorney
United States Attorney's Office, Civil Division
555 4th Street, NW
Washington, D.C. 20530

Of Counsel:
Sharon Gervasoni, Esq.
Assistant General Counsel
U.S. Parole Commission
Bethesda, MD

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JIBREEL REID, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 07-00725 (PLF) |
| | ) |
| UNITED STATES PAROLE COMMISSION, *et al.,* | ) |
| | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS COMPLAINT**

Plaintiff brings this action  pursuant to 42 U.S.C. § 1983, against the U.S. Parole

Commission and six individuals: Edward R. Reilly, Chairman, U.S. Parole Commission; Pat

Denton, Hearing Examiner; Isaac Fulwood, U.S. Parole Commissioner; and John Does #1, 2 and

3 ("Defendants"), alleging that Defendants conspired to violate Plaintiff's rights under the 5th

and 14th Amendments to the United States Constitution, in violation of the *ex post facto* clause,

by declining to release Plaintiff on parole.  Specifically, Plaintiff alleges that the Defendants 1)

failed to adequately consider his rehabilitative accomplishments; 2) violated the *ex post facto*

clause of the Constitution by applying the "revised harsher" D.C. Board of Parole Guidelines and

Policies ("Guidelines") from 2000, rather than the Guidelines that were in place in 1992, the year

Plaintiff was sentenced; and 3) relied on erroneous information concerning the victim.  Plaintiff

also alleges that Defendants' actions have caused him to suffer "headaches, depression, anxiety,

mental stress and deprivation of family." Complaint ¶ 47.   As relief, Plaintiff seeks 1)

compensatory damages of $10 million, 2) punitive damages of $5 million, 3) a declaratory

judgment that future parole hearings be conducted under 1992 guidelines, and 4) injunctive relief

against "harassment, intimidation and discrimination in any future parole hearings."

Defendants[1] hereby move, pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), (4), (5), and (6), to dismiss this action for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficiency of service of process, and failure to state a claim upon which relief can be granted.

## FACTUAL BACKGROUND

Plaintiff, Jibreel Reid, was sentenced by the District of Columbia Superior Court on September 28, 1993 to 15 years to life imprisonment for Murder II While Armed. *See* Exh. 1, Sentence Monitoring Computation Data, and Exh. 2, Plaintiff's Pre-sentence Report. Plaintiff became eligible for parole (i.e., completed service of his minimum term) on January 10, 2003. *See* Exh. 1 at 3.

The U.S. Parole Commission conducted an initial parole hearing for Plaintiff on July 9, 2002. At that time, the Commission calculated Plaintiff's Total Guideline Range under 28 C.F.R. §2.80 to be 154-179 months and denied parole. The Commission also ordered a reconsideration hearing after 36 months. Def. Exh. 4.

On September 14, 2005, during a reconsideration hearing, the hearing examiner determined that the Guidelines had been incorrectly computed at the initial hearing, and that the correct range should have been 170-190 months. The Commission awarded 13 months for superior program achievement, lowering the Total Guideline Range to 157-177 months. Denying parole, the Commission ordered a reconsideration hearing in 36 months, and issued the following explanation for its decision:

> After consideration of all factors and information presented, a decision above the Current Total Guideline Range is warranted because . . . you are a more serious risk than indicated by your salient factor score. The victim was a community activist in the neighborhood who tried to make his neighborhood safer and drug-free. On the date of this offense, the victim confronted you about selling drugs in his neighborhood after he had seen you in the neighborhood before and after other confrontations. The victim did pull out a knife and chase you. When you ran down the block, you told the victim you

---

[1]     The Defendants' limited appearance herein in the form of this motion does not constitute acquiescence in the manner of service, a waiver of proper service, or a voluntary entrance of appearance.

would be right back.  You returned with your friends and the group began to beat the victim with a car jack handle and a gun.  You and a codefendant go[t] the knife away from the victim and you stabbed the victim 9 times. Some of the wounds were 5 inches deep.  You then threatened to physically harm a potential witness if the witness went to the police.  You told the witness that if the witness provided information, either you or your friends would hurt the witness.  The brutality of this offense shows that you have a callous disregard for human life.  In addition, after you committed the offense, you threatened to retaliate against a witness.  The brutality of the offense and the threats of retaliation have not been taken into consideration in the computation of the guidelines. As a result, the guidelines do not reflect the totality of this offense.  Your behavior shows that you are a serious threat to the community.

*See* Exh. 3, Notice of Action.   On April 23, 2007, Plaintiff filed suit in the District of Columbia.

## STANDARD OF REVIEW

### A.     Lack of Subject Matter Jurisdiction

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *District of Columbia Ret. Bd. v. United States*, 657 F. Supp. 428, 431 (D.D.C. 1987).  In considering a motion to dismiss for lack of subject matter jurisdiction, the court accepts as true all material factual allegations in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), vacated on other grounds, 482 U.S. 64 (1987).  A court may also consider materials outside the pleadings as appropriate to resolve the question whether it has jurisdiction to hear the case. *Herbert v. Nat'l Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *Borg-Warner Protective Servs. Corp. v. EEOC*, 81 F. Supp. 2d 20, 23 (D.D.C. 2000).

### B.     Failure to State a Claim

Under Rule 12(b)(6), the Court is to treat a complaint's factual allegations as true, *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), and must grant a plaintiff  "the benefit of all inferences that can be derived from the facts alleged," *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir.1979).  However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts

alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions." *Akintomide v. United States*, 99-MS-0055 (PLF), 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing *National Treasury Employees Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996) and *Kowal v. MCI Communication Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). As the Supreme Court recently clarified in *Bell Atlantic Corp. v. Twombly*,

> a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions . . . . [f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true . . . .

127 S. Ct. 1955, 1959 (U.S. May 21, 2007) (NO. 05-1126). In deciding the motion, the court may consider additional evidence. *See Arizmendi v. Lawson*, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996) ("In resolving a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion.").

### C.    The Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if there is "no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). In deciding on a summary judgment motion, the fact-finder must draw inferences from the record in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Celotex Corp.*, 477 U.S. at 330.

There is no genuine issue of material fact if the relevant evidence, taken as a whole, indicates that a reasonable fact-finder could not return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Mere allegations or denials in the non-moving parties' pleadings are insufficient to defeat an otherwise proper motion for summary judgment. *Matsushita*, 475 U.S. at 586. Where

the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50; *see also Aka v. Washington Hospital Center*, 156 F.3d 1284, 1294 (D.C. Cir. 1998). Where the factual context renders his position implausible, the party opposing summary judgment must come forward with strong persuasive evidence to defeat it. *Matsushita*, 475 U.S. at 587.

## ARGUMENT

### I.    THE DOCTRINE OF SOVEREIGN IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST THE U.S. PAROLE COMMISSION.

It is fundamental, under the doctrine of sovereign immunity, that the United States cannot be sued without its consent. *United States v. Testan*, 424 U.S. 392 (1976)("except as Congress has consented to a cause of action against the United States, 'there is no jurisdiction...to entertain suits against the United States'")(quoting *Sherwood*); *United States v. Sherwood*, 312 U.S. 584 (1941)(the United States, as sovereign, "is immune from suit save as it consents to be sued, and the terms of consent to be sued in any court define that court's jurisdiction to entertain the suit."); *Settles v. United States Parole Commission*, 429 F.3d 1098, 1106 (D.C. Cir. 2005)(sovereign immunity blocks a §1983 claim against the U.S. Parole Commission); *Skwira v. United States*, 344 F.3d 64, 72 (1st Cir. 2003); *Richards v. United States*, 176 F.3d 652, 654 (3d Cir. 1999); *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). Thus, sovereign immunity protects the United States from liability and also deprives a court of subject-matter jurisdiction over claims against the United States. *Richards*, 176 F.3d at 654. Any governmental waiver of sovereign immunity must be unequivocal, e.g., *Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002); *United States v. Mitchell*, 445 U.S. 535, 538 (1980), and such waivers are strictly construed, *e.g., Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. Williams*, 514 U.S. 527, 531 (1995). Where the federal government waives its immunity from suit, "limitations and conditions upon which the Government consents to be sued must be strictly observed, and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981).

5

Such waivers are construed strictly in favor of the sovereign. *Library of Congress v. Shaw*, 478

U.S. 310, 318 (1986). Section 1983 of title 42 contains no such waiver of sovereign immunity.

## II.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST THE U.S. PAROLE COMMISSION UNDER §1983.

Plaintiff has filed suit under 42 U.S.C. § 1983. That statute provides

### § 1983. Civil action for deprivation of rights

Every **person** who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.(emphasis added). Clearly, section 1983 permits suit against any "person."

Therefore, to the extent Plaintiff may be attempting to sue the U.S. Parole Commission as an

entity, Plaintiff's claims are subject to dismissal because the Commission is not a "person" for

purposes of this statute, and therefore cannot be sued under §1983. *See Settles v. United States*

*Parole Commission, 429 F.3d 1098, 1100 (D.C. Cir. 2005); Al Fayad v. C.I.A.*, 229 F.3d 272

(D.C. Cir. 2000)(government  is not a "person" absent affirmative evidence in statute of intent to

include sovereign government within term).

## III.   PLAINTIFF'S CLAIMS AGAINST THE DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES MUST BE DISMISSED BECAUSE THE PLAINTIFF FAILED TO EFFECT PERSONAL SERVICE UPON THOSE DEFENDANTS.

The law is clear that service upon an individual is not effected by leaving a copy of the

complaint in his or her place of business with one who has not been specifically appointed as the

individual's personal agent for that purpose. *See Leichtman v. Koons*, 527 A.2d 745, 747 and n.5

(D.C. 1987)(office employee with authority to receive business mail does not, by virtue of that

position, have authority to receive process, and actual knowledge of the existence of a lawsuit is

no substitute for personal service).  A check of PACER reveals that Plaintiff has not submitted

any evidence that he personally served Defendants Reilly, Fulwood and Denton, or any of the

John Doe Defendants, for any individual capacity claims.  Accordingly, because there is no

indication that Plaintiff effected proper service, the claims against each of these Defendants, in

their individual capacities, are subject to dismissal pursuant to Fed.R.Civ.P. 12(b)(2), 12(b)(4)

and 12(b)(5).

## IV.    THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS REILLY AND DENTON.

### E.    Insufficiency of Process and Insufficiency of Service of Process

Individually-named federal defendants, sued in their personal capacities, must be served

with process in accordance with rules applicable to individual defendants.  *See Simpkins v.*

*District of Columbia Government*, 108 F.3d 366, 369 (D.C. Cir. 1997)(defendants in *Bivens*

action must be served as individuals, pursuant to Fed. R. Civ. P. 4(e)).  Rule 4(e)(2) of the

Federal Rules of Civil Procedure requires that a copy of the summons and complaint be delivered

to a defendant (or his appointed or legal agent) personally, or be left "at his dwelling house or

actual place of abode with some person of suitable age and discretion" who resides there.  Rule

4(e)(1) would permit service in this case in accordance with the service rules for the court of

general jurisdiction for the District of Columbia.  Service on the Attorney General of the United

States and the U.S. Attorney for the district in which the action is brought, pursuant to Fed. R.

Civ. P. 4(i) "does not obviate the requirement of personal service under Fed. R. Civ. P. 4(d)(1)

where the action is in substance against a federal official in his individual capacity."  *See*

*Lawrence v. Acree*, 79 F.R.D. 669, 670 (D. D.C. 1978); *Simpkins*, 108 F.3d at 369.   Similarly,

service at a place of business does not satisfy the service rule.

Plaintiff bears the burden of pleading the facts necessary to substantiate *in personam*

jurisdiction in this Court.  *See Kernan v. Durz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999);

*Masterson-Cook v. Criss Brothers Iron Works, Inc.*, 722 F.Supp. 810, 813 (D.D.C. 1989).  As

explained by the U.S. Supreme Court in *McNutt v. General Motors Acceptance Corp.*:

> If [a plaintiff's] allegation of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.  And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence.

*McNutt v. GMAC*, 298 U.S. 178, 189 (1936).  Contacts with the forum state caused by the

performance of official duties do not establish personal jurisdiction, as they do not result from

the official purposefully availing himself of opportunities or privileges offered from the forum

state. *See Ecclesiastical Order of the Ism of Am, Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir.

1988); *Green v. McCall*, 710 F.2d 29, 33 (2d Cir. 1983).

Here, Plaintiff cannot meet his burden to establish that this Court has personal

jurisdiction over Defendants Reilly and Denton, who do not reside in the District of Columbia.

In personam jurisdiction may be maintained by the United States District Court for the District of

Columbia over nonresidents of the District only if permitted by the "long arm" laws of the

District of Columbia. *Bolling-Bey v. U.S. Parole Com'n,* Civil Action No. 06-1732(JDB), 2006

WL 1030122, *3 (D.D.C. April 19, 2006); *Dove v. United States*, No. 86-0065-LFO, 1987 WL

18739, *1-2 (D.D.C. Oct. 9, 1987).  The District of Columbia exercises personal jurisdiction

based upon the  D.C. Code's "long arm" statute at D.C. Code §13-423 which states in relevant

part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's--
>
> (1) transacting any business in the District of Columbia;
>
> (2) contracting to supply services in the District of Columbia;
>
> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>
> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business,

engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

      (5) having an interest in, using, or possessing real property in the District of Columbia;

      (6) contracting to insure or act as surety ...; or

      (7) marital or parent and child relationship ...

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

In the instant case, Plaintiff does not establish proper in personam jurisdiction over Defendants Reilly and Denton. For example, Plaintiff does not demonstrate that Defendants Reilly and Denton are residents of the District of Columbia, that they transact any business within this jurisdiction, or that they maintain a place or places of business within this jurisdiction. *See, e.g. Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. June 14, 2002). Similarly, there is no *act* <u>and</u> *injury* alleged to have been accomplished within the District of Columbia by Defendants Reilly and Denton. Any injury to Plaintiff took place in Maryland, where the offices of the U.S. Parole Commission are located, or possibly in Kansas, where Plaintiff's first parole hearing was held, or Kentucky, where Plaintiff's second parole hearing was held. Defendant Reilly and Defendant Denton's lack of connection to this jurisdiction is simply insufficient under the District of Columbia Code's "long arm" statute to confer in personam jurisdiction in this Court. *Bolling-Bey*, 2006 WL 1030122, *3-4; *Zhu v. Gonzales*, Civil Action No. 04-1408(RMC), 2006 WL 1274767, *5-6 (D.D.C. May 8, 2006). Accordingly, because this Court lacks in personam jurisdiction over Defendants Reilly and Denton, these two Defendants must be dismissed from this suit pursuant to Fed.R.Civ.P. 12(b)(2).

## V.    Plaintiff's "JOHN DOE" Claims Must Fail

Plaintiff also appears to seek to name "John Doe #'s 1, #2, #3" as defendants. *See* Compl. caption, ¶¶ 16, 17, 18. Although the use of fictitious names is sometimes allowed for

privacy reasons, the general rule is that a complaint must name all the parties.  Fed. R. Civ. P.

10(a); *Roe v. New York*, 49 F.R.D. 279, 281-282 (S.D.N.Y. 1970); *but cf., M.K. v. Tenet*, 99 F.

Supp.2d 12, 17-18 (D.D.C. 2000).  Here, there is no compelling privacy reason for Plaintiff to

have failed to name all the parties in the Complaint.  Therefore, Plaintiff's failure to name or

serve the three "John Doe" defendants must lead to the dismissal of any individual-capacity

claims against the "John Doe" defendants.  Fed. R. Civ. P. 4.[2]

Even if the Court deems this suit to include these three unnamed individual officials, the

suit should, nevertheless, be dismissed pursuant to Fed. R. Civ. P. 12(b), as Plaintiff has failed to

establish personal jurisdiction for the unnamed John Does.  Because the record in this action does

not establish proper personal service upon the three John Does in their individual capacities,

named or unnamed, any claim against them in their individual capacities is subject to dismissal.

Further, none of the three John Doe Defendants have been properly put on notice of the

claims being asserted in this action.  In similar circumstances, courts have dismissed complaints.

*See e.g., Breslin v. City and County of Philadelphia*, 92 F.R.D. 764, 765 (E.D.Pa. 1981)

(dismissing Doe defendants because of due process concerns).  Plaintiff has failed to cite to any

authority in the Federal Rules of Civil Procedure, or any statute,  for joining fictitious "Doe"

defendants under routine circumstances.  *See, e.g., Armstrong v. United States Bureau of Prisons*,

976 F. Supp. 17, 23 (D.D.C. 1997).  Although leave to amend might be appropriate in other

settings, no such leave should be granted in this case because, as demonstrated herein, the

Complaint's other fatal deficiencies cannot be cured.

---

[2]It is well-established that, in an action against a federal employee in his or her individual capacity, the individually sued defendant must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil Procedure.  Service on the U.S. Attorney in the district where the action was brought pursuant to Fed. R. Civ. P. 4(i) " does not obviate the requirement of personal service under Fed. R. Civ. P. 4(d)(1) where the action is in substance against a federal official in his individual capacity".  *See Lawrence v. Acree*, 79 F.R.D. 669, 670 (D. D.C. 1978).  It is equally well-established that the plaintiff must bear the burden of establishing the Court's personal jurisdiction over the defendant.  *See McNutt v. General Motors Acceptance Corporation*, 298 U.S. 178, 182 (1936); *Tavoulareas v. Comnas*, 720 F.2d 192, 195 (D.C. Cir. 1983).

## VI.    PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE VENUE IS IMPROPER.

Venue for §1983 cases is governed by 28 U.S.C. §1391(b).  *See Stafford v. Briggs*, 444

U.S. 527, 544 (1980); *Urrutia v.Harrisburg County Police Dept.*, 91 F.3d 451, 462 (3d Cir.

1996)(general venue provision of 28 U.S.C. §1391 applies to claims brought pursuant to 42

U.S.C. §1983); *Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993).  Section 1391(b)

prescribes that a cause of action may be brought only in a judicial district where: (1) any

defendant resides if all defendants reside in the same state; (2) a substantial part of the events or

omissions giving rise to the claim occurred; or (3) any defendant may be found if there is no

district in which the action may otherwise be brought.  28 U.S.C. §1391(b).

Plaintiff's §1983 claims should be dismissed pursuant to Rule 12(b)(3) of the Federal

Rules of Civil Procedure because venue is improper.  First, Defendants Reilly and Denton do not

reside in the District of Columbia.  Since all of the Defendants do not reside in the District of

Columbia, the Defendants' place of residence cannot be a basis for venue.  Second, none of the

alleged events or omissions giving rise to the claim occurred in the District of Columbia.

Instead, the denials of parole, which form the basis for Plaintiff's claims, occurred in Maryland

(where the offices of the U.S. Parole Commission are located), Kansas (where Plaintiff's first

parole hearing was held), and Kentucky (where Plaintiff's second parole hearing was held).

Since none of the alleged events or omissions giving rise to the claim occurred in the District of

Columbia, the place where the events or omissions took place cannot be a basis for venue.

Lastly, there are other districts where the action might otherwise be brought.  Therefore, because

venue is improper in this Court, the Court should dismiss Plaintiff's claims pursuant to Rule

12(b)(3).

## VII.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO IMMUNITY FROM SUIT.

### A.   Defendants Are Entitled to Absolute Immunity from Suit in Their Individual Capacities.

Defendants Reilly, Fulwood and Denton are entitled to absolute immunity against Plaintiff's claims.  It is well-established law that members of the judiciary are entitled to absolute immunity.  *Pierson v. Ray*, 386 U.S. 547 (1967).  The Supreme Court has extended absolute immunity to certain officials who perform functions closely associated with the judicial process. *See, e.g., Butz v. Economou*, 438 U.S. 478 (1978)(hearing examiners entitled to absolute immunity).  Absolute immunity has also been extended to parole officials because they perform tasks that are functionally comparable to those of judges.  *Walrath v. United States*, 35 F.3d 277 (7th Cir. 1994)(parole revocation decisions made by Commissioner and Commission staff are absolutely immune from suit); *Sellars v. Procunier*, 691 F.2d 1295 (9th Cir.), *cert. denied,* 454 U.S. 1102 (1981)(absolute immunity for Parole Board member under *Butz); Hilliard v. Board of Pardons and Paroles*, 759 F.2d 1150 (5th Cir. 1985)(Parole Board members have absolute immunity); *Nelson v. Balazic*, 802 F.2d 1077 (8th Cir. 1986)(Parole Board members have absolute immunity for release decision); *Trotter v.Klincar*, 748 F.2d 1177, 1182 (7th Cir. 1984)(acts of hearing officer were "inexorably connected with the execution of parole revocation procedures" and thus the officer was entitled to absolute immunity); *Harper v. Jerrfries*, 808 F.2d 281, 284 (3d Cir. 1986)(absolute immunity for hearing examiner who conducted detention proceeding and made recommendation to parole board).  Therefore, defendants Reilly, Fulwood and Denton are entitled to dismissal of all claims against them in their individual capacities under the doctrine of absolute immunity.

### B.   Defendants Are Entitled to Qualified Immunity from Suit in Their Individual Capacities.

If the Court finds that the Defendants are not entitled to absolute immunity, dismissal is appropriate nonetheless because they are, at a minimum, entitled to qualified immunity.

Individually-named federal Defendants sued for money damages for violations of constitutional rights are immune from suit under the doctrine of qualified immunity if, *inter alia*, the complaint fails to allege facts that give rise to the violation of a clearly-established constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)(government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known). *See also Mitchell v. Forsyth*, 472 U.S. 511, 526(1985)("[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.")

Under the "clearly established" inquiry, a *Bivens* defendant need not demonstrate that the law was specifically established in his favor at the time he acted (i.e., "that a Supreme Court opinion had specifically approved their actions"), but only that the law was unsettled at the time. *Zweibon v. Mitchell*, 729 F.2d 162, 173-74 n.19 (D.C. Cir. 1983), *cert. denied*, 469 U.S. 880 (1984). "[O]nce the trial judge determines the law was not clearly established at the time the contested conduct occurred, the inquiry ceases." *Zweibon*, 720 F.2d at 168 *(citing Harlow v. Fitzgerald, supra*.)

Here, the individually-named Defendants are immune from suit because the Complaint does not allege the violation of constitutional rights clearly established under law. It is the application of the regulations governing the disposition of D.C. cases that forms the basis for Plaintiff's claims. The regulations governing disposition of D.C. cases were propounded in accordance with the Revitalization Act, which gave the Commission the "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons . . . ." *The National Capital Revitalization and Self-Government Improvement Act of 1997*, Public Law No. 105-33, §11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code §24-131 (formerly 24-1231). There is no "clearly-established law" that the Commission's use of these regulations violates the ex post facto clause.

13

See Fletcher v. District of Columbia, 481 F.Supp.2d 156, 168 (D.D.C. 2007)("There has been no decision of the Supreme Court or the courts in this district holding that the application of the Commission's reparole guidelines to D.C. Code offenders *is* an ex post facto violation") (reconsideration pending). Accordingly, because the Complaint does not allege the violation of constitutional rights clearly established under law, Defendants are immune from suit.

Likewise, Plaintiff's claim that the Commission violated his due process rights by not releasing him on parole does not state a violation of clearly established constitutional law. There is no constitutional right to parole under the D.C. parole statute. *See e.g., McRae v. Hyman*, 667 A.2d 1356 (D.C. App. 1995)(D.C. parole statute and regulations do not create a liberty interest in parole, and Parole Board has discretion to disregard scoring system). It is further established law that the merits of parole decisions are reviewed only in narrowly circumscribed circumstances. *Stanton v. U.S. Parole Com'n*, Slip Copy, 2007 WL 1847993, *3 (D.D.C. June 27, 2007), *citing Gambino v. Morris*, 134 F.3d 156, 159-60 (3rd Cir. 1998). Under *Stanton*, the Court is confined to determining whether there is a "rational basis in the record" to support the Commission's conclusions. While the issue in Stanton involved the revocation of parole and the issue here involves the denial of parole, the standards appear to be the same. As Plaintiff has not demonstrated that the Commission lacked a rational basis for its decision to deny his parole, Plaintiff Defendants are entitled to qualified immunity from suit.

**VIII. CLAIMS AGAINST DEFENDANT REILLY MUST BE DISMISSED BECAUSE THE DOCTRINE OF *RESPONDEAT SUPERIOR* IS INAPPLICABLE.**

To maintain a suit for damages against defendant Reilly in his individual capacity, plaintiff must allege, and ultimately prove, that he was directly and personally responsible for the alleged constitutional violation. *See Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir. 1987). Supervisory personnel may not be forced to defend a *Bivens* action under the doctrine of *respondeat superior*. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). Plaintiff's Complaint does not allege that defendant Reilly was personally and directly involved in any decision relating to denial of his parole. The only factual allegations set forth in the complaint with respect to

14

Defendant Reilly relate to his responsibilities as Chairman of the U.S. Parole Commission. Accordingly, because Plaintiff has not alleged the personal involvement of Defendant Reilly in denial of parole to him, his claims against Defendant Reilly must be dismissed.

IX.   **PLAINTIFF'S CLAIM THAT THE PAROLE COMMISSION AND ITS EMPLOYEES VIOLATED HIS DUE PROCESS RIGHTS UNDER THE 5TH AND 14TH AMENDMENTS IN DENYING HIM PAROLE IS MERITLESS.**

Under *Fletcher v. District of Columbia*, Commission officials' immunity from suit in their official capacities does not extend to suits for declaratory and injunctive relief. *Fletcher*, 481 F.Supp.2d 156, 162-63. Under the facts of this case, however, Plaintiff's claims under 42 U.S.C. § 1983 are without merit. A constitutionally-protected interest may arise either from the due process clause itself, or from a statute, rule, or regulations. *Hewitt v. Helm*, 459 U.S. 460, 466 ( 1983). A liberty interest "inherent" in the Constitution arises when a prisoner has acquired a substantial, although conditional, freedom such that the loss of liberty entailed by its loss is a serious deprivation requiring that the prisoner be accorded due process. *Gagnon v. Scarpelli*, 778, 781 (1973). Liberty interests that fall within this category include the revocation of parole, *Morrissey v. Brewer*, 408 U.S. 471 (1972), and the revocation of probation, *Gagnon*, 411 U.S. at 778. However, release on parole is not a constitutionally-protected liberty interest inherent in the due process clause; any liberty interest in parole release must be found in the parole statute. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979); *see also Stewart v. Gaines*, 370 F.Supp. 2d 293, 296 (D.D.C. 2005).

The Commission's regulation directs it to "assess whether the prisoner has demonstrated ordinary or superior achievement in the area of prison programs," which the Commission did in Plaintiff's case: at his initial hearing, the Commission found his programming did not rise to the level of superior, *see* Exh 5 at 2, and at his second hearing, it awarded 13 months for superior program achievement, *see* Exh. 3, at. 3; 28 C.F.R. §2.80(e). Thus, as Plaintiff did receive consideration for his institutional accomplishments, the Commission fully complied with its regulatory requirements in Plaintiff's case.

X.    **THE COMMISSION'S USE OF ITS AMENDED AND SUPPLEMENTED REGULATIONS DID NOT VIOLATE THE *EX POST FACTO* CLAUSE.**

A.    **Legislative and Regulatory Background**

By way of background, this complaint arises in the context of the transfer of paroling authority from the D.C. Board of Parole (abolished August 5, 2000) to the U.S. Parole Commission under the 1997 Revitalization Act.  *See Franklin v. District of Columbia*, 163 F.3d 625, 632 (D.C. Cir. 1998).  The Revitalization Act required the Parole Commission to exercise its authority "pursuant to the parole laws and regulations of the District of Columbia," but also gave the Parole Commission "... exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons..." See D.C. Code § 24-1231(a)(1) and (c)(1999), *recodified* as  D.C. Code § 24-131(a)(1) and (c) (2001).

Pursuant to its "amend and supplement" authority, the Commission, effective August 5, 1998, adopted a revised version of the D.C. parole regulations that had been in effect since 1987. See 28 C.F.R. § 2.70(1999) (the Commission's statement of authority for its revisions to the now-superseded rules of the D.C. Board of Parole at 28 D.C. M.R. §100 *et seq.*).  The existing parole guidelines of the D.C. Board of Parole were adopted by the Commission with revisions which: (1) added additional risk factors to the "total point score" by which the suitability of each prisoner for parole was calculated, and (2) substituted, in place of the Board's annual rehearing guideline, variable rehearing guideline ranges according to the Base Point Score (risk level) that is  calculated for each prisoner (*e.g.* as in a rehearing range of 12-18 months).

The guidelines of the D.C. Board of Parole, which were in effect from 1987 to 1998, are addressed in detail in *Ellis v. District of Columbia*, 84 F.3d 1413, 1415-17 (D.C. Cir. 1996). Briefly, these guidelines required the calculation of a "Total Point Score" based on the prisoner's Salient Factor Score and additional risk points. The prisoner's Total Point Score indicated the risk level presented by each prisoner.  If the Total Point Score was 2 or less at the initial hearing,

16

the prisoner would be ordinarily be granted parole. If the Total Point Score was 3 or more at the

initial hearing, parole would ordinarily be denied and the prisoner would be continued for a

rehearing. At rehearings, a score of 3 would indicate that parole should ordinarily be granted.

Similarly, under the Commission's1998 rules,[3] a score of 2 points or less at an initial hearing, or

3 points or less at a rehearing, would ordinarily result in a release on parole. Appendix

§2.80(j)(2001). Because points were subtracted from the Total Point Score at rehearings for

positive prison programming, a well-behaved  prisoner with a high Total Point Score could work

his score down to a 3 after one or more rehearings. In the case where parole was denied, the

ordinary continuance to a rehearing would be one year.

However, the D.C. Parole Board had plenary discretion to override the guidelines and

deny parole notwithstanding a favorable Total Point Score, and to order a rehearing ("set off")

after a much longer time than the ordinary one-year requirement. Successive rehearings were no

guarantee that parole would be granted. As explained in *Ellis v. District of Columbia,* "... under

the regulations, a prisoner with a low total point score shall be granted parole unless the Board, in

the exercise of its discretion, believes there is some other reason for not granting him parole."

*Ellis,* at 1419.

As stated above, in the Commission's 1998 revisions to this guideline system, the

Commission added to the Total Point Score some additional points that reflected the degree of

violence in the prisoner's current offense and the number of violent crimes on the prisoner's prior

record, *i.e.,* the more violence, the higher the score. The Commission also replaced the annual

rehearing guideline with specific guideline ranges to be followed in the case of parole denial.

However, the Commission maintained the Board's basic guideline for grants and denials of

---

[3]  Because the 1998 rule was adopted after July 1, 1998, it does not appear in the 1998
volume of 28 C.F.R.  Similarly, the 2000 amendments do not appear until the 2001 volume of the
C.F.R.  In 2001, the older version of the rule was moved to an appendix to §2.80.  Citations, for
simplicity's sake, will therefore be to "28 C.F.R. §2.80 (2001)" (the 2000 version of the rule) and
"28 C.F.R. Appendix §2.80 (2001)" (the 1998 version of the rule, moved into the Appendix by the
2000 amendment).

parole, as well as essential character of the Board's guidelines as a risk-based measure of suitability for parole that applies as soon as a prisoner becomes eligible for parole.

The Commission's revised version of the guidelines described in *Ellis v. District of Columbia, supra*, effective August 5, 1998, was again revised by the Commission effective December 4, 2000.  *See* 28 C.F.R. § 2.80 (2001), originally published at 65 Federal Register 70663 (November 27, 2000).  The 2000 revision maintained the paroling policies expressed in the 1998 guidelines, but converted the rehearing ranges applicable to each prisoner into a Total Guideline Range to guide the Commission's decisions. The Total Guideline Range is based on the point score calculations contained in the 1998 guidelines, plus the number of rehearings a prisoner would normally expect (after completing his minimum term) if he maintained good behavior.   The Commission explicitly stated in promulgating the rule that:

> The revised guidelines convert the rehearing ranges into a single range indicating the total prison time that may be served by the inmate, and authorize the setting of presumptive release dates up to 36 months from the date of the parole hearing.  **However, the Point Assignment Table [contained in the prior rules] remains the basis upon which the guidelines are determined**. . . . [T]he revised rule contains a presumptive credit for "ordinary program achievement," which currently [i.e., under the prior rule] must be determined on a case-by-case basis, in the guideline range itself.  Hence, inmates will now receive the benefit of having their "ordinary program achievement" points credited in advance.
> * * *
> The [rule] eliminates . . . the system of determining at each hearing (based on the Total Point Score) whether the inmate qualifies for parole at that time.  It substitutes the following decisionmaking procedure.
>
> Under Step 1, a Base Guideline Range is determined from the Base Point Score.  There is no change from the Base Point Score used in [the previous rule].  **The time expected for the inmate to qualify for parole (assuming no disciplinary infractions and ordinary program achievement) is simply made explicit.**

65 Fed. Reg. at 70663 (emphasis added).

## B.    *Ex Post Facto* Analysis, in General

The *Ex Post Facto* Clause of the Constitution, Article I, Section 9, Clause 3, "prohibits Congress and the states from enacting any law that 'imposes a punishment for an act which is not punishable at the time it was committed; or imposes additional punishment to that then

18

prescribed . . . .'" (citation omitted).  *Artez v. Mulcrone*, 673 F.2d 1169, 1171 (10th Cir. 1982).

In *Collins v. Youngblood,* 497 U.S. 37 (1990), the U.S. Supreme Court clarified that, to be *ex*

*post facto*, a law must either punish as a crime an act previously committed, which was innocent

when done; make more burdensome the punishment for a crime, after its commission; or deprive

one charged with a crime of any defense available when the act was committed.  497 U.S. at 52.

The Court specifically disavowed the notion that the *Ex Post Facto* Clause applies to "any

change which 'alters the situation of a party to his disadvantage.'" 497 U.S. at 50.[4]  As the Court

explained in *California Department of Corrections v. Morales*, 541 U.S. 499 (1995), the clause

is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for

criminal acts.'" 541 U.S. at 504.  Furthermore, the Court stated that:

> After <u>Collins</u>, the focus of the *ex post facto* inquiry is not on
> whether a legislative change produces some ambiguous sort of
> 'disadvantage,' nor . . . on whether an amendment affects a
> prisoner's '*opportunity* to take advantage of provisions for early
> release,'. . . but on whether any such change alters the definition of
> criminal conduct or increases the penalty by which a crime is
> punishable.

541 U.S. at 506, n.3 (emphasis original).

In *Garner v. Jones*, 529 U.S. 244, 250 (2000), the Supreme Court formulated the *ex post*

*facto* standard as whether the retroactive application of a change in a parole regulation creates "a

sufficient risk of increasing the measure of punishment attached to the covered crimes."   The

Court stated that a prisoner challenging a change in parole regulations as ex post facto "must

show that as applied to his own sentence the law created a significant risk of increasing his

punishment." *Garner* at 255; *see also Fletcher v. District of Columbia*, 391 F.3d 250 (D.C. Cir

2004).  Thus, Plaintiff bears a heavy burden on this issue.

---

[4]    While the *Collin*s court did not explicitly overrule *Weaver*, it called into question
continued reliance on the criterion of "disadvantage" to a party as sufficient to constitute violation
of the *ex post facto* clause.  The Court overruled *Kring v. Missouri*, 107 U.S. 221 (1882), on the
ground that its holding could only be justified if the Clause were understood to include any change
which "alters the situation of a party to his disadvantage," 497 U.S. at 50.  The Court stated that "We
think such a reading of the Clause departs from the meaning of the Clause as it was understood at
the time of the adoption of the Constitution, and is not supported by later cases." *Id*.

To the extent Plaintiff claims that under D.C. rules he would have been paroled after completing his minimum term, his claim is meritless. As the court clarified in *Ellis v. District of Columbia*, 84 F.3d 1413 (D.C. Cir. 1996), even where its point score indicated that parole should be granted in the ordinary case, the D.C. Board of Parole retained discretion to deny parole. *Ellis* held that parole release is never mandated or required under the D.C. parole statute and regulations. *Id*. at 1420. The District of Columbia's highest court has repeatedly held that the D.C. parole statute creates such unfettered discretion regarding the parole decision that courts will not review the merits of a decision to grant, deny, or revoke parole. *E.g., Stevens v. Quick*, 678 A.2d 28, 31 (D.C. App. 1996)(Court does not review the merits of decision by U.S. Parole Commission, under District's parole regulations); *Bennett v. Ridley*, 633 A.2d 824, 826 (D.C. App. 1993)("On a petition for a writ of habeas corpus, this court does not review the merits of the [D.C. Parole] Board's decision [to revoke parole], but only whether the Plaintiff has been deprived of his legal rights by the manner in which the revocation hearing was conducted, in order to determine whether there has been an abuse of discretion."); *Smith v. Quick*, 680 A.2d 396, 398 (D.C. App. 1996)("We do not review the merits of the Board's decision in denying parole, and are limited to a review of the procedures used by the Board in reaching its decision."); *Jones v. Braxton*, 647 A.2d 1116 (D.C. App. 1994)(merits of decision denying parole not judicially reviewable); *Brown-Bey v. Hyman*, 649 A.2d 8 (D.C. App. 1994)(length of set-off to rehearing is "merits" decision, and is not judicially reviewable).

Furthermore, given the Board's very broad discretion to exceed its guidelines, Plaintiff simply cannot demonstrate what his parole result would have been under the 1987 guidelines. At best, he can show what the guidelines would have called for in the "ordinary case," but he cannot demonstrate that the Board would have considered his case to be an "ordinary case" warranting parole release within the guidelines. As the Supreme Court noted in *Garner*:

> We do not accept the Court of Appeals' supposition that [the Georgia parole rule at issue] "seems certain" to result in some prisoners serving extended periods of incarceration. The standard announced in <u>Morales</u> requires a more rigorous analysis of the level of risk

20

created by the change in law. **When the rule does not by its own terms show a significant risk, the respondent [i.e., prisoner] must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule**. * * * In the case before us, respondent must show that as applied to his own sentence the law created a significant risk of increasing his punishment.

Without knowledge of whether retroactive application of the amendment [to the Georgia parole rule] increases, to a significant degree, the likelihood or probability of prolonging respondent's incarceration, his claim rests upon speculation.

*Id*. at 255-56 (emphasis added)(citations omitted).

Plaintiff cannot show that the 2000 guidelines are "facially more onerous" than the 1987 guidelines. *See Glascoe v. Bezy*, 421 F.3d 543, 547 (7th Cir. 2005)(holding 1999 guidelines not "facially more onerous" than 1981 guidelines, because both sets of guidelines apply the same parole statute, and the later guidelines "consider many of the same factors as the earlier guidelines, including the nature of the underlying offense and institutional behavior," with "the later guidelines quantify[ing] these factors" while "preserving the discretion of the parole decision-making body".) As in *Glascoe*, in this case the two sets of guidelines at issue (1987 and 2000) both apply the same parole statute (D.C. Code §24-204), and both consider the same factors (SFS, characteristics of offense behavior including use of weapon and death of victim, and institutional behavior both positive and negative).[5] The 2000 guidelines were intended by

---

[5] Under the 1987 guidelines, an initial point score was derived from computation of the SFS (a SFS score of between 8 and 10 yielding a point score of +0, of 6 or 7 yielding +1, of 4 or 5 yielding +2 and of between zero and 3 of +3 points). Points could then be added to this starting point score if the offense involved violence, weapons or drug trafficking, as well as for negative institutional behavior. 28 D.C.M.R. §204.4 (salient factor score); §204.17 (conversion of SFS to a point score) and §204.18(additional points based on offense factors and institutional behavior). *See* discussion of 1987 D.C. parole guidelines in *Ellis*, *supra* at 1415-17. Under this system, a prisoner received his initial hearing a few months before satisfaction of his minimum term, so the "months to parole eligibility" factor was considered in the guidelines by not making the guidelines applicable until after the prisoner had already served his months to eligibility. 28 D.C.M.R. §200.1 ("[T]he Board shall be authorized to release a prisoner on parole in its discretion after he or she has served the minimum term ...") and 28 D.C.M.R. §202.1 ("The Board shall permit an individual serving a sentence in which the minimum term is or exceeds three (3) years to file an application for parole six (6) months prior to the actual eligibility date. The Board shall then conduct a parole hearing.")

Under the 2000 guidelines, a base point score is derived from a virtually identical SFS to that

the Commission to "quantify" the factors considered under the 1987 guidelines.  See 65 Fed. Reg. at 70663 .  Accordingly, the 2000 guidelines cannot be considered "facially more onerous" than the 1987 guidelines.  This means that under *Garner* Plaintiff must demonstrate that the 2000 guidelines create a "significant risk of increased punishment" **for him**.  *Glascoe, supra* at 547.

In *Glascoe*, the court noted that under *Garner* this inquiry "is not to be confused with the question of whether the new parole practice is harsher for a class of prisoners generally; we must focus on the consequence of the new practice on the sentence of the particular inmate bringing the challenge". 421 F.3d at 548 (*citing Garne*r, 529 U.S. at 255).  Plaintiff has failed to meet his burden to demonstrate a "substantial likelihood of increased punishment" from application of the 2000 guidelines rather than the 1987 guidelines **in his case**.  His *ex post facto* claim must therefore be dismissed.

Because of the D.C. Parole Board's unbounded discretion, Plaintiff's hypothetical parole decision under the 1987 guidelines is unknowable with any degree of certainty.  Therefore, because the discretion of the D.C. Board under the 1987 guidelines was so broad and open-ended, Plaintiff **cannot** make the requisite showing that the application of the 2000 guidelines will result in a longer period of incarceration than under the 1987 guidelines.   There is no showing that Plaintiff could make which would meet his burden of proof on the question of "substantial likelihood of increased punishment," because of the completely speculative nature of any representation he may make about what the parole decision under the 1987 guidelines would have been. *Cf. Glascoe, supra* at 549 ("It is only remote speculation to suggest that the application of the [1999 guidelines] in [the prisoner's] case will increase his punishment").

---

used under the 1987 guidelines, and points can be added for violence in the current offense or in prior offenses, as well as for death of a victim or "high level violence". 28 C.F.R. §2.80(f).  The score resulting from this calculation is then converted to a range of months (the "base guideline range"), to which additional range can be added for negative institutional conduct.  A range for "months to eligibility" is also added (albeit, the prisoner has already served these months by the time of the hearing). §2.80(l).

**XI.    THE COMMISSION DID NOT CONSIDER "ERRONEOUS INFORMATION" IN MAKING ITS PAROLE DECISION IN PLAINTIFF'S CASE.**

Plaintiff alleges that the Commission erred in describing his victim as a neighborhood activist.  The scope of review of Commission fact-finding is limited to determining whether the Parole Commission had "any evidence" to support its finding:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusions reached . . .

*Superintendent v. Hill,* 472 U.S. 445, 454 (1985); *Marshall v. Lansing*, 839 F.2d 933, 946 (3rd Cir. 1988); *Solomon v. Elsea*, 676 F.2d 282, 290 (7th Cir. 1982).

As the United States Court of Appeals for the Third Circuit stated in *Zannino, supra*:

> The inquiry is not whether the Board is supported by the preponderance of the evidence, or by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Board's conclusions embodied in its statement of reasons.

531 F.2d at 691; *accord, Campbell v. U.S. Parole Commission*, 704 F.2d 106, 109-10 (3rd Cir. 1983); *Bridge v. U.S. Parole Commission*, 981 F.2d 97, 100 (3d Cir. 1992).

In this case, the pre-sentence report states that the prosecutor stated that "the decedent was a 47 year old black male who lived in the neighborhood and was a community activist who was trying to make his neighborhood a safer and drug free community."  *See* Exh. 2 at 3.  The report further states that the victim "confronted the defendant about him not selling drugs in his [the victim's] neighborhood for he [had] seen Reid in his building other times."  *Id.*  In addition, a victim impact statement which is part of the presentence report states the following:

> This murder occurred as a result of Arthur trying to make a difference in his neighborhood.  He was trying to keep his community safe from drugs; a community of people he had grown to love and care for; and a community that was not infested with drugs when he moved there seven years ago.  The murder occurred on Arthur's door steps.  He died in and for the neighborhood he was trying to protect from drugs and drug traffic.
>
> During the court hearing the defendant Reid stated that this murder occurred because Arthur called him "white boy".  We believe this murder occurred because Arthur had the courage to ask him to stop selling drugs in the neighborhood.  However, Arthur was

23

unable to defend himself during the court proceedings, just as he was unable to defend himself on the day of his death, when several guys beat and stabbed him to death.

*See* Exh. 2, appended Victim Impact Statement of Lillie and Hugh Ward (parents) and Doretta

Ward (sister).)  Accordingly, there is a rational basis in the record for the Commission's finding

that the victim was a neighborhood activist, and that he had confronted Plaintiff about selling

drugs in his neighborhood.  The Court should not disturb the Commission's findings, which are

supported by a rational basis in the record.

**XII.   Plaintiff Cannot Satisfy Any Element of the Test That Must Be Satisfied Before a Court May Issue Injunctive Relief.**

    **A.      The Standard of Review for a Preliminary Injunction**

The standards for injunctive relief, in the form of either a preliminary injunction or a

temporary restraining order, are well established:

> [T]he moving party must show (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction. *e .g., Mova Pharm. Corp.*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)) (internal quotation marks omitted).  A district court must "balance the strengths of the requesting party's arguments in each of the four required areas." *CityFed*, 58 F.3d at 747.  If the showing in one area is particularly strong, an injunction may issue even if the showings in other areas are rather weak.  *Id.*

*See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *see*

*also Sea Containers, Ltd. v. Stena AB*, 890 F.2d 1205, 1208 (D.C.Cir. 1989); *Wisconsin Gas Co.*

*v. F.E.R.C.*, 758 F.2d 669, 673-74 (D.C. Cir. 1985); *Washington Metropolitan Area*

*Transportation Commission v. Holiday Tours, Inc.*, 559 F.2d 841, 843-44 (D.C. Cir. 1977);

*Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958).

Thus, a preliminary injunction is "an extraordinary and drastic remedy, one that should

not be granted unless the movant, by a clear showing, carries the burden of persuasion." *See*

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *see also Yakus v. United States*, 321 U.S. 414

(1944); *Emily's List v. Federal Election Comm'n*, 362 F.Supp.2d 43, 51 (D.D.C. 2005), 362

F.Supp.2d at 51; *National Head Start Ass'n v. Department of Health and Human Services*, 297

F.Supp.2d 242, 246 (D.D.C. 2004); *Varicon Int'l v. Office of Personnel Management*, 934 F.Supp. 440 (D.D.C. 1996); *Kahane v. Secretary of State*, 700 F.Supp. 1162, 1165 (D.D.C. 1988). Similarly, a "TRO is an extraordinary remedy and should not be granted lightly." *See Federation Internationale De Football Ass'n v. Nike, Inc.,* 285 F.Supp.2d 64, 68 (D.D.C. 2003); *Experience Works, Inc. v. Chao,* 267 F.Supp.2d 93, 96 (D.D.C. 2003); *F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1343 (D.C. Cir.1980).

The Court should balance the strengths of the requesting party's arguments in each of these required areas. *CityFed Fin. Corp.*, 58 F.3d at 747. It is particularly important, however, for the movant to demonstrate a substantial likelihood of success on the merits. *See Emily's List*, 362 F.Supp.2d at 51 (citing *Barton v. Dist. of Columbia*, 131 F.Supp.2d 236, 242 (D.D.C. 2001) and *Benton v. Kessler*, 505 U.S. 1084, 1085 (1992)). If the movant is unable to do so, the movant must then present a "very strong showing" with respect to the other preliminary injunction factors. *See Emily's List*, 362 F.Supp.2d at 51-52 (quoting *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 366 (D.C. Cir. 1999)) (emphasis added).

This Circuit has set a high standard for irreparable injury. First, the injury "'must be both certain and great; it must be actual and not theoretical.' " *See Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (citing *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985) (per curiam)). The moving party must show "'[t]he injury complained of is of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.'" *Id*. Second, the injury must be beyond remediation. *See Chaplaincy*, 454 F.3d at 297. As the D.C. Circuit has explained:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.

*See Chaplaincy*, 454 F.3d at 297-98 (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C.Cir.1985) and *Va. Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C.Cir.1958)) (internal quotation marks omitted); *see also Sampson v. Murray*, 415 U.S. 61, 88-90 (1974).

An "injury held insufficient to justify a stay in one case may well be sufficient to justify it in another, where the applicant has demonstrated a higher probability of success on the merits." *Virginia Petroleum Jobbers Ass'n*, 259 F.2d at 925. "An injunction may be justified for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.*, 58 F.3d at 747. An essential prerequisite to injunctive relief is a sufficient showing by the plaintiff that he will suffer irreparable harm if the injunctive relief is not granted. *See, e.g., Davenport*, 166 F.3d at 360.

Here, Plaintiff is essentially alleging that he is entitled to be paroled and is requesting that the Commission be enjoined from applying its guidelines in the future. However, Plaintiff has failed to show a substantial likelihood of success with his allegations on the merits, as the Commission has a legitimate basis in Plaintiff's case for denying parole. To grant an injunction to Plaintiff would substantially injure the Commission by unnecessarily interfering with its decision-making process. Additionally, the precipitous action requested by Plaintiff is not in the public interest because it would support a meritless lawsuit. In sum, at least three of the four factors weigh heavily against injunctive relief, and the Court should deny Plaintiff's request for this extraordinary relief.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's action, and deny Plaintiff's request for an injunction because Plaintiff fails to meet the stringent standards for obtaining such relief.

Respectfully  submitted,

_____Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____s/Sherease Louis_____
Of Counsel:                         SHEREASE LOUIS
Sharon Gervasoni, Esq.              Special Assistant United States Attorney
Assistant General Counsel           United States Attorney's Office, Civil Division
U.S. Parole Commission              555 4th Street, NW
Bethesda, MD                        Washington, D.C. 20530

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JIBREEL REID, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )     Civil Action No. 07-00725 (PLF) |
| | ) |
| UNITED STATES PAROLE COMMISSION, *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing Motion to Dismiss, Statement of Material

Facts, Memorandum in Support, supporting Exhibits, and Proposed Order was made by

depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

JIBREEL REID
R 11277-007
USP BIG SANDY
P.O. Box 2068
Inez, KY 41224

on this 10rd day of July, 2007.

                                        /s Sherease Louis
                                        SHEREASE LOUIS
                                        Special Assistant United States Attorney
                                        United States Attorney's Office
                                        Civil Division
                                        555 4th Street, N.W.,
                                        Washington, D.C. 20530



```
5H      PAR3D  540*23 *                SENTENCE MONITORING                    12-21-2004
PAGE 001           *                 · COMPUTATION DATA              *        15:52:13
                                       AS OF 12-21-2004
```

REGNO..: 11277-007 NAME: REID, JIBREEL

```
FBI NO...........: 782130TB5              DATE OF BIRTH: ▓▓▓▓▓▓▓
ARS1.............: BSY/A-DES
UNIT.............: B3/4                   QUARTERS.....: B08-424L
DETAINERS........: NO                     NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  LIFE

----------------------CURRENT JUDGMENT/WARRANT NO: 010 ------------------------

```
COURT OF JURISDICTION...........: DIST OF COLUMBIA, SUPERIOR CRT
DOCKET NUMBER...................: F 9158-92 D,E,F,G
JUDGE...........................: MITCHELL
DATE SENTENCED/PROBATION IMPOSED: 09-28-1993
DATE WARRANT ISSUED.............: N/A
DATE WARRANT EXECUTED...........: N/A
DATE COMMITTED..................: 08-15-2001
HOW COMMITTED...................: DC SUPERIOR COURT COMT
PROBATION IMPOSED...............: NO
SPECIAL PAROLE TERM.............:
```

```
                    FELONY ASSESS  MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.:     $00.00         $00.00          $00.00       $300.00

RESTITUTION...:  PROPERTY:  NO   SERVICES:  NO      AMOUNT:  $00.00
```

------------------------CURRENT OBLIGATION NO: 010 --------------------------

OFFENSE CODE....:  621
OFF/CHG: WW-3202,2403 MURDER II WHILE ARMED (COUNT G)

```
  SENTENCE PROCEDURE.............: DC GTCA ADULT SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.: LIFE
  MINIMUM TERM...................:      15 YEARS
  DATE OF OFFENSE................: 08-19-1992
```

G0002       MORE PAGES TO FOLLOW . . .



```
5H     PAR3D  540*23 *              SENTENCE MONITORING        *    12-21-2004
PAGE 002          *                COMPUTATION DATA         *    15:52:13
                                   AS OF 12-21-2004
```

REGNO..: 11277-007 NAME: REID, JIBREEL

-----------------------CURRENT OBLIGATION NO: 020 -------------------------
OFFENSE CODE....:  695
OFF/CHG: 22-722(A)(3) OBSTRUCTION OF JUSTICE (CT D,E,F)

```
SENTENCE PROCEDURE.............: DC GTCA ADULT SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.:    1 YEARS
MINIMUM TERM...................:    4 MONTHS
RELATIONSHIP OF THIS OBLIGATION
  TO OTHERS FOR THE OFFENDER....: CONSECUTIVE
DATE OF OFFENSE................: 08-19-1992
```

-----------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 05-03-2004 AT BSY AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010, 010 020

```
DATE COMPUTATION BEGAN..........: 09-28-1993
AGGREGATED SENTENCE PROCEDURE...: DC GTC ACT ADULT AGGREGATE SENTENCE
TOTAL TERM IN EFFECT............: LIFE
TOTAL TERM IN EFFECT CONVERTED..: LIFE
AGGREGATED MINIMUM TERM.........:   15 YEARS      4 MONTHS
EARLIEST DATE OF OFFENSE........: 08-19-1992
```

```
JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     08-29-1992     09-08-1992
                                     11-04-1992     09-27-1993
```

G0002      MORE PAGES TO FOLLOW . . .

```
5H     PAR3D  540*23 *              SENTENCE MONITORING               *     12-21-2004
PAGE 003 OF 003 *                  COMPUTATION DATA              *      15:52:13
                                   AS OF 12-21-2004


REGNO..: 11277-007 NAME: REID, JIBREEL


    TOTAL JAIL CREDIT TIME.........: 339
    TOTAL INOPERATIVE TIME.........: 0
    STATUTORY GOOD TIME RATE.......: 0
    TOTAL SGT POSSIBLE.............: 0
    PAROLE ELIGIBILITY.............: 01-10-2003
    STATUTORY RELEASE DATE.........: N/A
    TWO THIRDS DATE................: N/A
    180 DAY DATE...................: N/A
    EXPIRATION FULL TERM DATE......: LIFE

    NEXT PAROLE HEARING DATE.......: 01-00-2005
    TYPE OF HEARING................: STATUTORY INTERIM HEARING

    PROJECTED SATISFACTION DATE....: N/A
    PROJECTED SATISFACTION METHOD..: LIFE




    S0055        NO PRIOR SENTENCE DATA EXISTS FOR THIS INMATE
```

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
SOCIAL SERVICES DIVISION – ADULT BRANCH

### PRESENTENCE REPORT

PDID No.: 446-498
Docket No.: F-9158-92D-G

Re: Jibreel Reid

Date Referred: 7-7-93

To: The Honorable George W. Mitchell

Date Due: 9-17-93

From: Probation Officer Denise Lent

Sentencing Date: 9-21-93

---

Defendant Information:
True Name: Jibrel Kahlil Reid

Address: 800 Sothern Ave., SE
Washington, D.C.   1129

Tel. #: 202-562-4272

Aliases: Rick, Suicide, Bussy

Age/Birthdate: 18/█████   Sex: Male

Birthplace: New York, NY

Time in D.C. Area: Life

Citizenship: U.S.
Alien No.: N/A

Marital Status: Single Dependents: 0 Education: 11th grade

Social Security No.: Unknown

Permit No.: None

DCDC No.: 256-560

FBI No.: None assigned

---

Offense, Code and Penalty: Murder II While Armed; ww-3202, 2403; up
to life.   Obstruction of Justice (three counts); 22-722(a)(3);
$1,000/3 years or both

Plea: Not Guilty  Judgment: Guilty (Jury) Bond Status: No Bond

Detainers or Pending Charges: None

Co-defendants:
Marcus Boykin    (Dkt No.): F-2465-93C   (Status): Sent. date 10-22-93
Clarence Blair   (Dkt No.): F-2464-93    (Status): Not guilty
Marquis Sams     (Dkt No.): F-11072-92   (Status): Sent. date 9-20-93

AUSA: Robert Walker

Telephone: 202-514-7521

Defense Counsel: Blaise Super

Telephone: 202-628-1200

"In accordance with the U.S. Parole Commission and Reorganization Act,
Public Law 94-233, dated March 15, 1976 this report is disclosable to
inmates in federal institutions for purposes of parole consideration."



2

**CONTACTS:**

9-9-93      Interviewed defendant at DC Jail

9-13-93    Contacted uncle George Gibbs, left message on machine

9-14-93    Consulted with uncle George Gibbs

            Consulted with defendant's mother Arleen Reid

**OFFICIAL VERSION:**

According to the Official Report on Wednesday, August 19, 1992 at
about 6:30 p.m., the decedent was transported to DC General Hospital
suffering with multiple stab wounds to the body. Upon arrival in the
emergency room, life saving efforts were unsuccessful. The decedent
Arthur Lee Ward was pronounced dead at 6:49 p.m. by the medical staff.
On Thursday August 20, 1992 an autopsy was performed on the body of
the decedent at the DC Medical Examiners Office. The cause of death
was due to multiple sharp force injuries with blunt lacerations with
exsanguination. The manner of death was ruled a homicide.

A witness in the area was interviewed and related the following
information: The complainant had just pulled into the 1800 block of
Fort Davis Street, S.E., when he was approached by a lone black male
subject. The decedent was still sitting in his auto when a verbal
argument started. The decedent told the subject to get out of his
face and repeated it a few times. The decedent then pulled out a nine
inch chef's knife and pointed the same at the lone subject. The
subject then threw a two liter plastic orange bottle at the decedent
hitting him in the head. The subject then backed away while taunting
the decedent as the decedent walked towards him. The decedent was
swinging the knife at the subject. The subject then fled the scene.
After ten to fifteen minutes had passed, the witness stated that the
complainant had gotten out of his car and was approaching the building
when two cars pulled up and stopped in the middle of the street. Six
to seven black males approached the decedent and began to beat him
about the body with a handgun and car jack handle. The subject that
argued with the decedent earlier pulled a knife and began to stab the
decedent about the neck, back and chest. The decedent fell to the
ground and witnesses stated that subjects continued to beat on the
decedent with the black male subject continuing to stab him. The
subject stopped their attack on the decedent and fled the scene in
their vehicles.

On Wednesday August 26, 1992, a witness to the offense viewed nine
black and white photographs and upon coming to the fifth photograph
the witness stated "this is the one with the knife". This photograph
had a likeness of the defendant and was identified as Jibrell Reid.
Also on this date, a friend of the defendant was interviewed at which
time he stated that the defendant had killed the decedent. This
friend stated the defendant had told him that the decedent had pulled

3

**OFFICIAL VERSION:** continued

out a knife and was swinging at him.  Based on this information an arrest warrant was issued for the defendant.

This officer spoke with the US Attorney who related the following information.  He related that the decedent was a 47 year old black male who lived in the neighborhood and was a community activist who was trying to make his neighborhood a safer and drug free community. The neighborhood was known as a high drug activity area and the decedent watched the drug activity that was going on in his building in the past.  The decedent had complained to the police on occasion about the drug activity in his building and was also very dedicated to trying to keep his neighborhood drug free.  The AUSA further related that the decedent on the day in question initially did pull out a knife on the defendant.  He confronted the defendant about him not selling drugs in his neighborhood for he seen Reid in his building other times.  They did have other verbal confrontations.  On the day of the offense, the decedent was in his car and Reid was on the block. The decedent did shout out some words to the defendant and they did have a heated verbal exchange.  The decedent did in fact pull out a knife and chase the defendant around and called the defendant white boy.  Defendant Reid then ran down the block and turned to the victim and said "I'll be right back".  Defendant Reid then went by his friends and told them that the victim and he got into an argument and that he pulled out a knife on him.  Defendant Reid then said to some of his friends "take me back so I can get this guy".  Defendant Reid and his friends then got into cars.  Defendant Reid saw his girlfriend and said to her when he was passing "did she want to see what he was going to do" she said no.  He then drove towards the building. Defendant Reid then went up to the victim and began punching him with his friends.  Before the victim could get his knife out, Defendant Reid and codefendant Sams got the knife from the victim and Reid proceeded to stab him nine times all over his body some knife wounds reaching the depth of five inches.  While Defendant Reid was using a knife, codefendant Sams tried to shoot him with the gun but the gun didn't work so he hit him with the gun.  Codefendant Boykins then began hitting the decedent in the head with a club theft device. Defendant Reid lost control and left the victim for dead on the street while he drove off with his friends.  After the attack, he called his girlfriend and told her that he thought he killed someone.  He then proceeded to tell her about the attack.  The next day he told his girlfriend that if she went to the police that he would f....her up and that if something happened to him he would get his friends to f....her up.  It was determined that the decedent died from blunt force trauma and knife wounds.  It should be noted that Your Honor ordered a Victim Impact Statement for this case.  This writer is attaching two statements that were submitted by the decedent's siblings.  These statements are attached for Your Honor's information. All the decedent's relatives appear to have suffered a great emotional loss and experienced a great deal of pain and grief over the violent death of their brother.

4

**DEFENDANT'S VERSION:**

"I didn't wish to make a statement.  I should have let him kill me if I knew this was going to happen.  I'm not goint to say anything else.  My ex-girlfriend said I threatened her.  I never did.  She was my heart.  I think she thought I was talking to another girl and was jeolous.  She wanted to get back at at me."

**PRIOR CRIMINAL RECORD:**

**Juvenile:**

**Washington, D.C.**

| 1-7-92 | Simple Assault J-104-92 | No petitioned 1-7-92 | Juv.   Clerks Office |
|--------|------------------------|----------------------|----------------------|
| 8-25-92 | Simple Assault J-3258-92 | Dismissed | " " |

**Adult:**

| 8-19-92 | Obstruction of Justice F-11313-92 | Indicted on 3-11-93 | DCSC |
|---------|-----------------------------------|---------------------|------|
| | Murder I While Armed | Dismissed | " |
| | Poss. of Firearm During a Crime of Violence | Dismissed | " |
| | Obstruction of Justice 3 counts | Instant Offense | " |
| | Murder II While Armed F-9158-92A-G | Instant Offense | " |

**PAROLE/PROBATION/PRE-DISPOSITION ADJUSTMENT:**

The defendant's record does not reflect any active periods of probation nor parole supervision.  However the defendant was incarcerated pending disposition on these charges.

5

**EMPLOYMENT HISTORY:**

Due to the defendant's young age, he has not established any employment history. The defendant was a student prior to his involvement on these charges. He also reported he was receiving social security benefits totally $300 a month due to the death of his father eleven years ago.

**SOCIAL HISTORY:**

Family History:

The defendant was born in New York, New York to Jimmie Reid and Arlene Reid. The defendant was reared in this jurisdiction with both of his parents present until his father's death when he was nine years of age. The defendant was the only child born to this union. Mr. Reid states that his mother initially told him that his father died from a heart attack but further relates that his cousin told him recently that his father died from an overdose of heroin. He further states that his father was a dope dealer who was in and out of jail prior to his death. As a result, the defendant was reared by his mother in a single parent home. However the defendant contends that prior to his father's death his father was physically and verbally abusive to him over the years. He also claims that his mother played an abusive role in his life. The subject further states that his mother has a drinking problem who has been physically abusive to him over the years. He claims that his mother stabbed him in the arm when he was 15 years of age and told him that she wanted him out of her life. He contends that his mother told him that he reminded her of his father and that she wanted to hurt him. He claims that he has not seen his mother since February of this past year and that he no longer wishes to have anything to do with her. Mr. Reid further states that his mother (when she visited him in jail), told him that she had people that she could hire to kill him and the defendant states that he just told her not to bother he could do it himself. The defendant contends that he was afraid to tell anyone about his physical abuse by both his mother and father cause he was fearful that they would kill him if he told anyone. The defendant's mother related that he never presented any problems during his formative years. In January, 1992, he began to exhibit some odd behavior. When asked for specifics, she stated he experienced hallucinations about his father and wrote letters to himself about the devil. She stated that neither she nor his father were ever abusive of him and was very disturbed that her son would say such things. Mrs. Reid feels strongly that he is in need of psychiatric treatment and is fearful that he may be suicidal if not given the propert care. Mrs. Reid appears to be very concerned about her sons welfare.

6

SOCIAL HISTORY:   continued

Education/Training:

The defendant relates that he was attending the DC Street Academy until his incarceration on these charges for the Instant Offense.   He expressed a desire to further his education in the immediate future. No other formalized education or training to note.

Military:

The defendant has never served in the U.S. Armed Services and has failed to register as required.   The defendant has been advised of his obligation to register with the armed services.

Marital Status and Living Arrangements:

The defendant is single and claims paternity to no children. Prior to his involvement on these charges, he was residing with his mother in the family home.   However, the defendant relates that he has stayed periodically with his uncle George Gibbs (his maternal uncle) due to his problems with his mother and not wishing to reside in her neighborhood.   Mr. Gibbs related that he came from a very supportive home where there was no physical abuse.   He describes the defendant as a quiet individual with not much of a temper who possibly got caught with peer pressure.

Financial Status:

The defendant reports no outstanding debts nor savings at this time.

Health:

The defendant claims to be in good health with no physical ailments noted.   However, he claims that he suffers from high blood pressure but is not on any prescribed medication at this time.   In reference to mental health, the defendant contends that while he was incarcerated on these charges the court referred him for a psychological evaluation.   The defendant states that he has begun hearing voices that his father has been asking him to join him in death and has been encouraging him to take his life.   He also claims to hear the decedent's voices saying that he is going to get back and kill him.   He states that he was initially on various types of medication and believes that he was a manic depressive.   However the defendant claims that he is no longer on medication and states that he did not find the treatment that he received at the DC Jail to be helpful for him.   The defendant states that he has attempted suicide while incarcerated for he feels that he has tried to do everything right but believes that other people are out to hurt him.

7

SOCIAL HISTORY: continued

Substance Use/Abuse:

The defendant relates that he became involved with alcohol when he was 13 years of age due to the availability in the house because of his mother's use of alcohol. He further states that he became involved with PCP and marijuana and cocaine in 1990. The defendant contends he only used PCP on one occasion because it made him paranoid. His drug of choice was cocaine which he used an average of three times per week and claims he last used in May of this past year. He has never been involved in any substance abuse treatment programs but expressed an interest for one in the future.

EVALUATION AND DIAGNOSIS:

Jibreel Reid is before the court for sentencing having been found guilty by a jury of three counts of Obstruction of Justice and one count Murder II While Armed. The defendant's juvenile record is reflective of two arrests for Simple Assault that were dismissed. The Instant Offense reflects the defendant's first involvement with the adult court system. However, this writer would like to note that the defendant was only 17 years of age when he became involved with these charges but was subsequently charged as an adult due to the serious nature of the crime. Due to the defendant pleading not guilty, he did not wish to make a statement concerning his involvement on the Instant Offense and therefore did not express any remorse. Mr. Reid did try to down play his involvement and more or less looked upon himself as a victim who was preyed upon by the decedent. He tried to express himself as more or less a martyr where if he knew all of this would evolve with him being charged with the decedent's murder, he would have let the victim kill him instead. Regarding the Obstruction of Justice, the defendant was adamant in stating that he never threatened her and claims that he was very much in love with her. He believes that she was jealous of his being with other girls and believed that she just wanted to get back at him. As stated, the defendant did not show any remorse for the fact that an innocent victim lost a life as a result of his actions.

The defendant was raised in this jurisdiction in a single parent home by his mother due to his father's untimely death when he was only nine years of age. The defendant claims to come from a very dysfunctional family unit where he claims physical abuse by both of his parents. However none of this information has been substantiated. Both the defendat's mother and uncle state no abuse occurred in the home and related they have been supportive of him over the years. Due to the defendant's young age he was reportedly in the eleventh grade at the time of his involvement for the Instant Offense. In reference to substance abuse, he admits to experimenting with various types of drugs, PCP and marijuana and cocaine but ascertained that cocaine was

8

EVALUATION AND DIAGNISIS:    continued

his drug of choice that he was using on an average of three times a week prior to his incarceration.    He related to this writer that he would like to become involved in some type of treatment program in the immediate future to help him deal with his substance use.

As mentioned earlier, the defendant was only 17 years of age when he became involved with this heinous and vicious crime.    It is obvious that the defendant was seeking revenge and retaliation on the victim without any justification to explain such a vicious attack on the decedent.    It is felt that the defendant was not acting out of self defense but rather this was more or less a gang related attack where the defendant was angered by the decedent's latest confrontation which resulted in the defendant seeking revenge.    It is felt that the defendant sought his other friends in order to make a deliberate attack on the decedent because he most likely felt that the victim disrespected him earlier and he needed to prove his manlihood to his other friends.    It is felt that not only did the defendant plan this violent act but also asked his girlfriend if she wanted to witness it. The defendant did not stop after he left the decedent to be left for dead on the street, he then proceeded to call his girlfriend and brag to her about the attack on the victim.    He then threatened the girlfriend at a later date that if she leaked any of this information to the police, he would make sure that he would retaliate against her at a later date.    This writer would like to note that the victim in this case was a citizen who was very active in his community in trying to make it a safer and drug free environment for his other neighbors. The loss of life by the victim in this case has caused a great deal of emotional pain and devastation on his other living family members. This officer feels that this was just a down right cold blooded violent gang attack on a victim who had no chance of defending himself against the defendant and his cohorts.    This writer feels strongly that the defendant has exhibited very aggressive, belligerent, violent behavior and believes that he needs to be held accountable within a confined setting for an extensive period of time.    It is this writer's feeling that the defendant is possibly at a young age where his peers have had an influential effect on his behavior.    It is felt that he was caught up with trying to prove to his peers that he was not going to accept any individual disrespecting him and that he would make an individual pay if he felt he was not treated properly.    What is also of concern to this officer is the fact that the defendant appeared to calculate his vicious attack on the decedent and was able to carry out his plan in front of a group of his friends to possibly to assert once again his "manliness".    Due to the viciousness of this crime, this writer feels that the defendant should be sentenced to an extensive period of confinement and receive counseling to address his aggressive, criminal behavior.

9

**TREATMENT PLAN:**

1.    Incarceration as a punitive measure and deterrent to further criminal activity.

2.    Enrollment in educational/vocational training program

3.    Substance abuse education/counseling

4.    Counseling to address aggressive and violent behavior

5.    Mental health evaluation with treatment as deemed appropriate

10

**RECOMMENDATION:**

Incarceration

**INTENSIVE PROBATION SUPERVISION ELIGIBILITY:**

The defendant is not eligible for assessment by the Intensive Probation Supervision Program.

Respectfully submitted,

Denise Lent
Probation Officer
508-1834

Approved by:

Supervisory Probation Officer
508-1772

DL/aw

Victim Impact Statement

August 24, 1993

Defendants:
       Jerbel Reid

Victim:  Arthur Lee Ward

   We the family come before you to speak about the cold
blooded brutal murder of Arthur L. Ward.  This is an extremely
traumatic day in our life.

   A year ago today August 19, 1992, we received a call that
informed me and my family that my older brother's life was
violently interrupted and came to a screeching unannounced halt.

   The month of August will forever have an indelible mark on
my family and me.  On August 16th I celebrate the birthday of my
lovely wife and on August 19th I grieve the senseless death of my
brother of 48 years.

   My brother, Arthur L. Ward and I grew up together shared
holidays, birthday, weddings and the birth of our children.
Arthur, would help anyone and give anybody a helping hand.  What
ever community he lived in he became the good neighbor to his
neighbors.  He was always cooperative and willing to do what was
best to improve his community.

   In the neighborhood where he grew up, he adopted a family
that was fatherless and assisted them in securing food, clothes,
and transportation so the children could get health physicals and
immunization shots so they could attend school.

   Arthur believed in justice.  He along with other janitors
spear headed and organized a demonstration that was effective in
getting improve working conditions and better wages for the
organization, "Justice for Janitors."

   The above are just a few of the numerous contributions he
made to the city he loved Washington, DC.  It is now time to get
justice for Arthur Lee Ward.  Everytime I see a knife it reminds
me of how my gentle brother received nine stab wounds in his
body.  Now, when I see a club, that was designed to be used as a
security device on a car, it reminds me how a club was used to
brutally beat my brother to death.  These useful instruments and
a gun in the hands of individuals who misused them makes my
family and I ever so anxious to see justice properly rendered.

2

Victim:  Arthur L. Ward

Arthur will never celebrate another birthday, wedding or holiday with his beautiful and lovely daughter, granddaughter, mother, father, sister, and brothers he left behind.  We hope some day we will see him in heaven because, we know his big generous heart and soul is with our heavenly father.

My family and I hope that one day this senseless killing will cease in Washington, DC and all over the world.  We hope that no other family will be crushed so abruptly with a death of a love one by those that do not have regard for life.

My family and I everyday live with the pain, grief and emptiness of Arthur's violent death.  Our family hopes that God grants use the wisdom and jurisprudence to rectify this wrong and give those individuals the maximum sentence for their horrendous actions.  Help use rid our society of some of the crime and violence we now endure.

Sincerely,

Donald L. Ward, Sr.
(Brother)

## VICTIM IMPACT STATEMENT

**Defendant:**

**Victim:**    Arthur L. Ward

Arthur L. Ward was taken from us during a cold-blooded, brutal, and senseless murder.

This murder has devastated our entire family, especially Arthur's mother and father, his daughter and granddaughter, his brothers and sister, and his nephews. We the family of Arthur L. Ward, miss his presence every day and we will miss him forever.

This murder occurred as a result of Arthur trying to make a difference in his neighborhood. He was trying to keep his community safe from drugs; a community of people he had grown to love and care for; and a community that was not infested with drugs when he moved there seven years ago. The murder occurred on Arthur's door steps. He died in and for the neighborhood he was trying to protect from drugs and drug traffic.

During the court hearing the defendant Reid stated that this murder occurred because Arthur called him "white boy." We believe this murder occurred because Arthur had the courage to ask him to stop selling drugs in the neighborhood. However, Arthur was unable to defend himself during the court proceedings, just as he was unable to defend himself on the day of his death, when several guys beat and stabbed him to death.

Arthur was an honest, hard working and good man. His life was spent looking out for others' health and safety. We ask that justice be served for having taken a decent man from our family and community.

We ask that the defendants receive the maximum sentence for the senseless violent crime. We hope that no other family or friends have to live with such emptiness, pain and sorrow as our family.

Doretta J. Ward
(Sister)

Lillie M. Ward
(Mother)

Hugh L. Ward
(Father)



U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland 20815-7201

**Notice of Action**

Name: REID, Jibreel
Register Number: 11277-007
DCDC No: 256-560

Institution: Big Sandy USP

Date: October 13, 2005

As a result of the hearing conducted on September 14, 2005, the following action was ordered:

Deny parole. Continue to a Three-Year Reconsideration Hearing in September 2008.

<u>NOTE</u>: You have been found eligible for consideration under the Commission's presumptive release date policy at 28 C.F.R. 2.75 (effective January 4, 2001).

**REASONS:**

Your Current Total Guideline Range is 157-177 months. See the attached sheet for the components that make up your Current Total Guideline Range. These components are your Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 155 months as of September 23, 2005.

After consideration of all factors and information presented, a decision above the Current Total Guideline Range is warranted because a decision outside the guideline range is warranted because you are a more serious risk than indicated by your salient factor score. The victim was a community activist in the neighborhood who tried to make his neighborhood safer and drug free. On the date of this offense, the victim confronted you about selling drugs in his neighborhood after he had seen you in the neighborhood before and after other confrontations. The victim did pull out a knife and chase you. When you ran down the block, you told the victim you would be right back. You returned with your friends and the group began to beat the victim with a car jack handle and a gun. You and a codefendant go the knife away from the victim and you stabbed the victim 9 times. Some of the wounds were 5 inches deep. You then threatened to physically harm a potential witness if the witness went to the police. You told the witnesses that if the witness provided information, either you or your friends would hurt the witness. The brutality of this offense shows that you have a callous disrespect for human life. In addition, after you committed the offense, you threatened to retaliate against a witness. The brutality of the offense and the threats of retaliation have not been taken into consideration in the computation of the guidelines. As a result, the guidelines do not reflect the totality of this offense. Your behavior shows that you are a serious threat to the community.

GOVERNMENT
EXHIBIT



U.S. Department of Justice
United States Parole Commission
5550 Friendship Boulevard
Chevy Chase, Maryland  20815-7201

**Notice of Action**

| | |
|---|---|
| Name:  REID, Jibreel | Institution:  Leavenworth FPC |
| Register Number:  11277-007 | |
| DCDC No:  256-560 | Date:      July 25, 2002 |

In the case of the above-named, the following parole action was ordered:

Deny parole.  Continue to a Reconsideration Hearing in July 2005, after the service of 36 months from your hearing date of July 9, 2002.

**REASONS:**

Your Total Guideline Range is 154-179 month(s).  See the attached sheet for the components that make up your Total Guideline Range.  These components are your Salient Factor Score; Base Point Score; Base Point Score Guideline Range; Months Required to Serve to Parole Eligibility Date; Disciplinary Guidelines (if applicable); and Superior Program Achievement Award (if applicable).

You have been in confinement as a result of your current offense behavior for a total of 105 months as of July 10, 2002.

After consideration of all factors and information presented, a decision outside the Total Guideline Range at this consideration is not found warranted.

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer.  In certain cases, copies may also be sent to the sentencing court.  You are responsible for advising any others you wish to notify.

cc:     Sharon Barnes-Duroin, SCSA
        CSS Data Management Group
        D.C. Court Services & Offender Supervision Agency
        300 Indiana Avenue, N.W., Suite 2149
        Washington, D.C.  20001

Clerk:   VAH

GOVERNMENT
EXHIBIT
4



### SALIENT FACTOR SCORE (SFS-98)

| Your Pts | Salient Factor Score (SFS-98) Item Explanations |
|---|---|
| 3 | **A** - Prior convictions/adjudications (adult or juvenile) None = 3; One = 2; Two or three = 1; Four or more = 0 |
| 2 | **B** - Prior commitments of more than thirty days (adult or juvenile) None = 2; One or two = 1; Three or more = 0 |
| 0 | **C** - Age at commencement of the current offense/prior commitments of more than thirty days (adult or juvenile) (see table below for an explanation) |
| 1 | **D** - Recent commitment free period (three years)<br>No prior commitment of more than thirty days (adult or juvenile), or released to the community from last such commitment at least three years prior to the commencement of the current offense = 1; Otherwise = 0 |
| 1 | **E** - Probation/parole/confinement/escape status violator this time<br>Neither on probation, parole, confinement, or escape status at the time of the current offense; nor committed as a probation, parole, confinement or escape status violator this time = 1; Otherwise = 0 |
| 0 | **F** - Older offenders<br>If the offender was 41 years or more at the commencement of the current offense (and the total score from items A-E above is 9 or less) = 1; Otherwise = 0 |
| 7 | **Salient Factor Score (SFS-98)** (sum of points for A-F above) |

### BASE POINT SCORE

| Your Pts | Base Point Score Category Explanations |
|---|---|
| 1 | **I** - Contribution from Salient Factor Score<br>10-8 (Very Good Risk) = +0; 7-6 (Good Risk) = +1; 5-4 (Fair Risk) = +2; 3-0 (Poor Risk) = +3 |
| 2 | **II** - Current or Prior Violence<br>Violence in current offense and any felony violence in two or more prior offenses = +4; Violence in current offense and any felony violence in one prior offense = +3; Violence in current offense = +2; No violence in current offense and any felony violence in two or more prior offenses = +2; Possession of firearm in current offense if current offense is not scored as a crime of violence = +2; No violence in current offense and any felony violence in one prior offense = +1 |
| 3 | **III** - Death of Victim or High Level Violence (Category III points are added to points scored in Categories I and II)<br>Current offense was high level or other violence with death of victim resulting = +3; Current offense involved attempted murder or violence in which death of a victim would have been a probable result = +2; Current offense was other high level violence = +1 |
| 6 | **Base Point Score** (sum I-III above) |



## DISCIPLINARY GUIDELINES

You have 2 non-drug related infraction(s) [0-2 months each], which requires 0-4 months to be added to your base point score guideline range.

You have behavior that constitutes new criminal conduct in a prison facility, which is rated as Category Three severity because it involved Possession of a Weapon (Knife) in a Correctional Institution.  This requires 12-16 months to be added to your base point score guideline range.

You have an aggregate disciplinary guideline range of 12-20 months, which is to be added to your base point score guideline range.

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

**Not Applicable**

### TOTAL GUIDELINE RANGE

| | |
|---|---|
| 36 — 48 | Base Point Score Guideline Range |
| 111- 111 | Months Required to Serve to Parole Eligibility Date |
| 12 — 20 | Disciplinary Guideline Range |
| less  0 — 0 | Superior Program Achievement Award (if applicable) |
| 154- 179 | Total Guideline Range |

| Base Point Score Guideline Range | | Points For SFS Item C | | | |
|---|---|---|---|---|---|
| Base Point Score | Guideline Range | Age | Prior Commitments | | |
| | | | 0-3 | 4 | 5+ |
| 3 or less | 0 months | 26 & Up | | | F |
| 4 | 12-18 months | | | | |
| 5 | 18-24 months | 22-25 | 2 | | 0 |
| 6 | 36-48 months | | | | |
| 7 | 54-72 months | 20-21 | 1 | 0 | 0 |
| 8 | 72-96 months | | | | |
| 9 | 110-140 months | 0-19 | 0 | 0 | 0 |
| 10 | 136-172 months | | | | |

THE ABOVE DECISION IS NOT APPEALABLE.

Copies of this Notice are sent to your institution and to your supervising officer. In certain cases, copies may also be sent to the sentencing court. You are responsible for advising any others you wish to notify.

cc:     CSS Data Management Group
        D.C. Court Services & Offender Supervision Agency
        300 Indiana Avenue, N.W., Suite 2070
        Washington, D.C. 20001



-2-

Clerk   ADC

## DISCIPLINARY GUIDELINES

**Not Applicable**

## SUPERIOR PROGRAM ACHIEVEMENT AWARD

You have been granted a reduction of 12 month(s) from your Total Guideline Range for superior program achievement. This was granted because you have completed 5 Vocational Training Programs and 22 Self-Help Programs. Additionally, you have maintained clear conduct and you have consistently received good work reports.

### CURRENT TOTAL GUIDELINE RANGE

| | | |
|---|---|---|
| **6 —** | Base Point Score | |
| **36—48** | Base Point Score Guideline Range | |
| **122 – 122** | Months Required to Serve to Parole Eligibility Date | |
| **12—20** | Disciplinary Guideline Range (before last hearing) | |
| less **0 — 0** | Superior Program Achievement Award (before last hearing) | |
| **170 - 190** | Previous Guideline Range Conversion | |
| **0 — 0** | Disciplinary Guideline Range | |
| less **13 — 13** | Superior Program Achievement Award (if applicable) | |
| **157 - 177** | Current Total Guideline Range | |

| Base Point Score Guideline Range | |
|---|---|
| Score | Guideline Range |
| 3 or less | 0 months |
| 4 | 12-18 months |
| 5 | 18-24 months |
| 6 | 36-48 months |
| 7 | 54-72 months |
| 8 | 72-96 months |
| 9 | 110-140 months |
| 10 | 156-172 months |

Reid 11277-007
Queued: 10-13-2005 09:37:29 BOP-Big Sandy USP |

Clerk    ADC

(INI-S-B)

&lt;SUMCODE-DCINIADN_SUM&gt;

## D.C. ADULT INITIAL HEARING SUMMARY
(INITIAL HEARINGS AFTER 1/2/01 AND CASES ELIGIBLE FOR
(RETROACTIVE CONVERSION TO PRESUMPTIVE DATE PROCEDURES)

### Offense of Conviction - Murder II While Armed, Obstruction of Justice (Two Counts)

Name             :REID, Jibreel
Reg. No          :11277-007
Hearing Date     :7/9/2002
Institution      :Leavenworth USP
Hearing Examiner :████████████

## Prisoner's Statement:

The subject stated that when he left the scene after he was hit in the head he went and got several friends and his intention was to talk to the victim to see if he could reconcile their differences. He advised that he had had a discussion with the man the day before and they were able to reconcile their differences. He denied pulling a knife on the man however. He related that the victim continued his anger rebuffs of his attempts and pulled the knife. He related that he took the knife off the victim and does not remember much after this. He stated that he lost control. After this, the subject stated that he did not wish to talk about the offense anymore as he is trying to place it behind him.

The subject's SFS was discussed with him as well as the Base Point Score. He had no disagreements.

## Institutional Factors

## Discipline:

The subject came to the hearing with three disciplines which are reflected in the Pre-review. He admits the misconduct of 4/25/96 for Lying/Lack of Cooperation and Disrespect, which carries guidelines of 0-2 months. The subject related that he could not remember the misconduct of 1/25/95 for Disrespect, Lack of Cooperation, Threatening, Disobeying a General Order. He indicated he was not denying it simply could not remember it. The misconduct was discussed with the case manager. They indicated that this is most like DHO conduct for Threatening. Therefore, it carries guidelines of 0-2 months. The last misconduct dated 7/25/95 was for Possession of Two Shanks. The subject admitted this stating at the time he had been transferred to Lorton and it was a very stressful environment and he had been threatened with rape a number of times. He stated that it was necessary that you carry something for your protection there. He therefore admitted this misconduct.

The guidelines for misconduct are 12-20 months. This consist of 12-16 months for Possession of

REID.112

GOVERNMENT
EXHIBIT
5

(INI-S-B)

a Knife and 0-4 months for two administrative non drug related misconduct.

**Program Achievement:**

The subject brought with him a number of certificates all of which are copied and in his USPC file. At the present time, he is enrolled in the CODE Program. He has been in the program since January, it is an intensive 12 month program covering Anger Management, Problem Solving, Criminal Lifestyle, and Cognitive Thinking. He is scheduled to graduate in January of 2003. It is noted that there are a number of certificates in the file which the examiner looked at but has not included in any recommendation for superior program achievement. The reason for this is that the examiner believes that they should all be considered at the next hearing where the subject will have completed the CODE Program as well as any others. Most of the certificates of completion are for minor courses but there are several including Anger Management and a Drug Course which was a 12 week program at Torrance County Detention Facility. The subject be given some consideration for this at the next hearing.

**Release Plans:**

Upon release, the subject plans to return to the Washington, DC area. He although he has family there he does not plan to reconcile with them and hopes to be released through a CCC placement. He indicates that he will work as a cook or whatever else is available to him when released.

**Representative and Representative's Statement:**

Subject was represented by Tim Majerus, DNA Treatment Specialist. He indicated that subject was a part of his Anger Management Class and did very well. He related that he was responsive to the course and did all of his assignments. The Anger Management course is a 10 week course and he believes that the subject has learned something from it. He indicated that his plans are to continue in other DNA course work.

---

**Guideline Parameters**

---

**SFS:** 7

**Base Point Score:**      6

36-48  Base Guideline Range
111    Months Required to Serve to PE Date
12-20  Disciplinary Guideline Range
0      Superior Program Achievement Award
159-179    Total Guideline Range

**Modifications to Prehearing:** None.

REID.112

(INI-S-B)

---

## Overall Evaluation and Recommendation

---

**Evaluation:**

The subject has served a total of 105 months as of 7/10/2002. He is in the service of a life sentence for Murder II. Subject came to the hearing with three misconduct, the last of which occurred in 1996. The first occurred in 1995 and was the most serious for possession of a shank at Lorton. He has had no misconduct 4/5/96 and has programmed well. The examiner has chosen not to recommend a award for superior program achievement based on his past 30 certificates for completion for course work over a term of 105 months. The examiner does not believe that this rises to the level of superior program achievement at this time. However, if he completes the CODE Program, the examiner believes that he should be given some consideration for superior program achievement which will include the past certificates.

At this hearing, subject has guidelines of 159-179 months. Since he has served only 105 months towards these guidelines at this time, the examiner will recommend that he be continued for a Reconsideration in January of 2005. It is noted that this is 24 months from his parole eligibility date. At some point, the subject will need the inclusion of the Drug Aftercare condition.

**Recommendation:**

PAH
July 18, 2002

REID.112

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JIBREEL REID,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | )    **Civil Action No. 07-00725 (PLF)** |
| | ) |
| **UNITED STATES PAROLE COMMISSION,** *et al.,* | ) |
| | ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |

## ORDER

This matter is before the Court on Respondents' Motion to Dismiss.  Upon consideration

of this Motion, the grounds stated therefor and the entire record of this case, it is this _____

day of _____, 2007, hereby

**ORDERED** that Respondents' Motion be and hereby is GRANTED; and it is

**FURTHER ORDERED** that the Complaint is dismissed.


_____
UNITED STATES DISTRICT JUDGE


<u>Copies to:</u>

Sherease Louis
Special Assistant United States Attorney
Judiciary Center Building
555 Fourth Street, N.W., Civil Division
Washington, DC  20530

JIBREEL REID
R 11277-007
USP BIG SANDY
P.O. Box 2068
Inez, KY 41224